35 C.C.P.A.(Patents)

## J. R. CLARK CO. v. RICH LADDER & MFG. CO. (three cases).

### Patent Appeals Nos. 5404–5406.

Court of Customs and Patent Appeals.
May 4, 1948.

Rehearing Denied June 14, 1948.

Frank A. Whiteley, of Minneapolis, Minn., for appellant.

Frank Zugelter, of Cincinnati, Ohio (Zugelter & Zugelter, of Cincinnati, Ohio, of counsel), for appellee.

Before GARRETT, Presiding Judge, and HATFIELD and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

In this proceeding there are involved two petitions by appellee to cancel trade-mark registrations of the notation Rid-Jid held by appellant, and one opposition by appellee to appellant's application for a third registration of the same term. The issues being substantially identical, the three cases were submitted before the tribunals of the Patent Office upon a single record. Before the Commissioner of Patents who (acting through the First Assistant Commissioner), 70 U.S.P.Q. 1, affirmed the decisions of the Examiner of Trade-Mark Interferences in each case. The three cases were briefed and argued together, and he disposed of them in a single decision.

The appeal to this court, therefore, was stated in the notice of appeal to be "a single unitary appeal for all three cases, since the same facts determine each of the above noted proceedings." We so accept it and, following the example of the commissioner, we shall deal with all three of the cases in a single decision.

Also, in the interest of clarity, we shall follow the course of the commissioner and of the attorneys before us by referring to appellant as Clark and to appellee as Rich.

It is unnecessary that the background of the case be recited in minute detail.

It appears that a company by name of Oregon Wooden-Ware Manufacturing Company, a corporation of Illinois, probably during the first half of the year 1918, adopted and used (but is not claimed to have registered) the trade-mark Rid-Jid for certain of its products not fully identified in the record before us; that in July 1920 a company by name of Rid-Jid Products Corporation acquired the assets of Oregon Wooden-Ware Manufacturing Company, and on August 12, 1924, upon an application filed March 28, 1924, secured registration under the Act of February 20, 1905, of the notation "Rid-Jid" for use on ironing tables, the registration being numbered 187,917; that subsequently Clark acquired such an interest in the assets of Rid-Jid Products Corporation and a successor thereof that it claimed ownership of the mark for ironing tables, and certificate was, in fact, renewed to it in the Patent Office, the copy in the record before us being stamped, "Renewed August 12, 1944, to the J. R. Clark Company, a corporation of Minnesota."

Cancellation of registration 187,917 is involved in Appeal No. 5404.

In Appeal No. 5405, there is involved the cancellation of registration No. 230,-289.

The latter registration is for the same term—"Rid-Jid"—printed with type of a somewhat different appearance. It was registered in the name of The J. R. Clark Company July 19, 1927, upon an application filed in the Patent Office December 24, 1936, for use on stepladders and stepladder stools. Use was alleged "since on or about Dec. 21, 1923." The registration was under the Act of February 20, 1905.

Sufficient appears of record to show that Clark and Rich have been business rivals for many years, competing actively in many—perhaps all—of the states as manufacturers and sellers of various kinds of wooden articles, including ironing tables, stepladders, and stepladder stools, the precise articles to which the mark involved in the proceedings before us have been applied. It further appears that there has been litigation between them relative to patent, trade-mark, and unfair competition complaints.

The instant litigation seems to have grown out of an allegation of unfair competition made by Clark against Rich in a letter of May 24, 1941, written by Clark's attorney, the text of which reads:

"My client, The J. R. Clark Company of this city, has called to my attention your Catalogue, without number or title, but which I am informed is of recent issue, and particularly to your advertisements of ironing tables on pages 32 and 33.

"On page 32 you refer to your ironing table designated as The Rich Auto Krat, with the statement 'The most Rigid table on the market.' On the following page under the title The Rich Durex appears the statement 'This is the same Rigid ironing table as the Auto Krat.' In both of these cases the word rigid is printed in full caps more conspicuously than your trade mark terms 'Auto Krat' and 'Durex.'

"You cannot be ignorant of the fact that my client's ironing tables have for many years borne the trade mark term 'Rid-Jid' as per the enclosed folder, and that this term has been very extensively advertised and is well-known throughout the United States as indicating my client's very superior ironing table. Your use of the word Rigid in the manner in which you use it must, therefore, be presumed to be for the purpose of obtaining the benefit and advantage of that advertising and public knowledge and certainly will have that effect and is a clear encroachment upon my client's rights in the good-will of its business connected with the sale of its 'Rid-Jid' ironing tables.

"In my opinion this is a clear case of unfair competition. Hence, on behalf of my client I must ask for immediate written assurance that you will withdraw the two objectionable pages from your catalogue and see to it that there is no repetition of this objectionable and damaging advertising.

"Please let me hear from you in respect to this within the next week or ten days."

Under date of May 27, 1941, counsel for Rich responded to the letter of counsel for Clark, the pertinent portion of the reply reading:

"Your letter of May 24, 1941, addressed to Rich Ladder Mfg. Co., Cincinnati, Ohio, was referred to me.

"It is my recollection that the Rich Company has been using the descriptive word Rigid in substantially the manner and form that now constitutes the apparent basis of your complaint, since a date prior to the patent infringement suit between our clients, and which was concluded several years ago.

"I shall examine into the matter further and in due course I shall address you again and advise you as to the position that Rich Company will assume upon your complaint."

\*   \*   \*   \*   \*   \*

So far as disclosed by the record, there was no further correspondence between the parties and no proceedings were instituted by Clark respecting the alleged unfair competition, but on April 30, 1943, almost two years after the exchange of the quoted letters, Clark filed an application, Serial No. 460,287, for the registration of the term for use on ironing tables. The application was identical in all material respects with certificate No. 187,917, hereinbefore described, which was renewed to Clark August 12, 1944, and it is noted that the application asserted "Applicant is the owner of registration under Certificate No. 187,917," which meant, of course, that Clark was claiming ownership of the certificate at the time of filing the application some thirteen months before the certificate was renewed to the J. R. Clark Company upon the records of the Patent Office.

Following the publication respecting the Clark application, which appeared in the Official Gazette of the Patent Office for

June 1944, Rich (The Rich Ladder and Manufacturing Company is stated to be a corporation of the State of Ohio, having its principal place of business in the City of Cincinnati) filed the notice of opposition which is here involved in Appeal No. 5406, being opposition No. 23,508. The notice of opposition seemingly was filed July 21, 1944.

Adverting again to certificate No. 187,-917 for use of the mark on ironing tables, it may be repeated that it was renewed to Clark August 12, 1944. On September 25, 1944, Rich filed the petition to cancel it (Cancellation No. 4453).

The petition to cancel certificate No. 230,-289 for use of the mark on stepladders and stepladder stools was filed January 27, 1945 (Cancellation No. 4516).

Seemingly, some testimony had been taken in the opposition case and first cancellation case before the petition in the second cancellation case was filed. A stipulation was entered into that such testimony and any thereafter taken might be used with the same force and effect in the last cancellation case as in the first and as in the opposition case. Thus the testimony, so far as relevant, was made applicable to all three of the proceedings.

That which we regard as the really fundamental ground upon which Rich bases opposition to the registration is embodied in the first paragraph of the notice of opposition. This paragraph reads: "The term Rid-Jid sought to be registered by the applicant is merely a phonetic variation of the term Rigid wherefore same is primarily descriptive of various products of the general category produced by the applicant and the opposer, wherefore registration of the term Rigid or any phonetic variation thereof, for example, Rid-Jid would constitute an encroachment upon the general right of the public to lawfully utilize a word or term common in the English language and particularly applicable to products of the character produced by the opposer."

In subsequent paragraphs it is alleged that Rich has extensively used the term "rigid" printed in capital letters in advertising its various products including ironing boards of various types, ladders of vari-ous types and other products; that the registration sought by Clark would be inimical to the interests of Rich, and that Rich would be damaged thereby. Reference is made to the notice given Rich in the letter of May 24, 1941, supra, alleging unfair competition, and of the reply of Rich thereto. Other litigation between the parties is alluded to.

There are other allegations which do not seem to us to be particularly relevant but which even if treated as relevant need not be considered in viw of our conclusion upon what we have designated as the really fundamental allegation in the notice of opposition.

In the answer of Clark it is first stated: "1. Answering Paragraph 1 of the Notice of Opposition, each allegation therein contained is expressly denied."

In subsequent parts of the answer the allegation by Rich that the term Rigid, prominently displayed in full caps, was used by Rich in advertising its various products is admitted, but it is charged, in effect, that its use in that form was begun after Clark by extensive advertising, etc., had built up a large and valuable good will in the term Rid-Jid as a trade-mark, and further charged that—" * * * this use of the term Rigid in prominently displayed caps by opposer upon goods substantially identical with those of applicant, was not an honest use in the sense of or for the purpose of giving a mere descriptive meaning to the word rigid, but was so prominently displayed and used deliberately and intentionally for the purpose of fraudulently trading upon applicant's aforesaid good will and of passing off the goods of opposer as and for the goods of applicant."

Clark, of course, denies that Rich would be damaged by the registration sought or that Rich has been, or is likely to be, damaged by the registration which it is sought to have cancelled. In fact Clark, upon the theory that Rich has been guilty of unfair competition, insists, in effect, that Rich has no right either to oppose the registration or to petition for the cancellation of the registrations which have been secured. We quote from the concluding paragraph of Clark's answer to the notice of opposition, the following: "16. And applicant believes

and charges and asserts the fact to be that opposer has filed this opposition, not in good faith because of any possible damage it could be caused by reason of the registration of the trade-mark Rid-Jid to the applicant, but in the hope that if, by any means, and specifically by means of this opposition proceeding, opposer could defeat the registration of the applicant's trade-mark Rid-Jid, it thereby might secure for itself some kind of license or opportunity to continue with unpunished impunity and. to greatly expand its fraudulent unfair competition with applicant and its trading upon and unlawfully enjoying the benefits of applicant's good will in its trademark Rid-Jid. For which reason applicant alleges and charges that opposer does not come into Court here with clean hands and for that reason, in addition to the other reasons herein stated, should have its Notice of Opposition dismissed."

As has been indicated, it is obvious that the issues are the same in the three cases. If the opposition be sustained the petitions for cancellation should be granted for the same reasons. On the other hand, if the opposition be overruled and the application for registration allowed, the petitions for cancellation should be denied. So, it is unnecessary to review the different pleadings separately in rendering our decision.

There is a very elaborate record in the case, several hundred pages of it consisting of testimony the most of which is irrelevant and unnecessary to a decision upon the issues actually involved here.

The primary question is whether the term "Rid-Jid" is the phonetic equivalent of the common dictionary word "rigid."

We take it that if the word "rigid" whether printed with capital letters or small letters by use of either plain or fanciful type were applied to ironing tables, stepladders and stepstools, as the term "Rid-Jid" is shown to have been applied to such articles, there would not be the slightest doubt in the mind of any reasonably well-informed person that such word—"rigid"—was descriptive of a character or quality of the ironing tables, or stepladders, or stepstools, and and that it was deliberately used for that reason.

The Commissioner of Patents after reciting that it was the opinion of the Examiner of Trade-mark Interferences that the mark is merely descriptive of the merchandise to which applied said: "* * * It need hardly be added that his finding of descriptiveness was based upon the obvious fact that 'Rid-Jid' is the phonetic equivalent of the word 'rigid.' Cf. American Druggists' Syndicate v. United States Industrial Alcohol Co., 55 App.D.C. 140, 2 F.2d 942; Otard, Inc. v. Italian Swiss Colony, 141 F. 2d 706, 31 C.C.P.A. (Patents) 955."

The commissioner conceded, of course, that the two terms differ in appearance—a matter which Clark suggested before us—but pointed out that Clark is in no position to dispute their identity in sound and meaning because Clark had objected to Rich's use of "rigid" printed in capital letters as being a clear encroachment upon Clark's trade-mark rights.

We are in entire agreement with the view that Rid-Jid as printed in the registrations sought to be canceled and in the application here opposed is the phonetic equivalent of the word rigid. Furthermore, we are of opinion that it is a fair inference from the record taken as a whole that it was fully intended by all the different companies that used the mark that it should convey to the public the idea of rigidity as a characteristic or quality of the article to which applied. The parties, of course including Clark, had the unquestionable right to so use the term, but they had no exclusive right of use which entitled them to register the mark and upon the basis of such registration, deprive others including Rich, of the legitimate use of a common descriptive term or word.

We are here dealing only with the opposition to Clark's application for registration and the two petitions for cancellation of the registrations hereinbefore described. We entertain no doubt of Rich's right to prosecute the opposition, nor of the right to prosecute the petitions for cancellation, and, for the reasons stated, we are of opinion that the opposition should be sustained, the application of Clark denied, and that both petitions for cancellation should be sustained.

Therefore, the decision of the commissioner approving each of the decisions of the Examiner of Trade-Mark Interferences is affirmed.

Affirmed.

By reason of illness, O'CONNELL, Associate Judge, was not present at the argument of this case and did not participate in the decision.